VASSER v CITY OF MUSKEGON

PLOUGH v CITY OF MUSKEGON

Docket Nos. 66287, 66290. Argued December 1, 1981 (Calendar Nos. 3, 4).—Decided December 22, 1982.

George J. Vasser was granted a duty disability pension by the pension board of the City of Muskegon as provided in the city charter following his retirement as a city fireman because of cardiac illness. Under the pension plan then in effect, the benefits were payable only during Mr. Vasser's lifetime. Following his death, his widow, Shirley J. Vasser, petitioned the Bureau of Workers' Disability Compensation for benefits. She also applied for death benefits under the city's new pension plan, which was prescribed by ordinance. The city pension board granted her request, proceeding as if the decedent had elected the joint and last survivor option under the new plan on the day before his death. A bureau hearing referee denied workers' compensation benefits without determining the existence of any connection between Mr. Vasser's death and his employment because Mrs. Vasser had elected to accept the city's pension benefits, and, under the Worker's Disability Compensation Act, she was not entitled to both workers' compensation and "like benefits" under a charter pension plan. The Workers' Compensation Appeal Board affirmed. The Court of Appeals, R. M. Maher, P.J., and R. B. Burns and D. F. Walsh, JJ., affirmed in a memorandum opinion (Docket No. 47004). The plaintiff appeals.

L. B. Plough, Jr., was granted a duty disability pension under the pension plan provided in the Muskegon City Charter following his retirement as a city police officer because of cardiac illness. An ordinance providing a new pension plan was approved, and the pension board allowed every retiree to have the opportunity to alter his benefits by electing a joint and last survivor option, precluding termination of benefits upon the death of the retiree. Mr. Plough elected this option, and his benefits were

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Workmen's Compensation §§ 51, 180.
[2-4] 81 Am Jur 2d, Workmen's Compensation § 180.

reduced to reflect the option and to recoup overpayments under the charter plan. He also petitioned the Bureau of Workers' Disability Compensation for benefits. A referee determined that Mr. Plough was required to elect either pension benefits or workers' compensation benefits. The WCAB reversed in part, allowing workers' compensation benefits for the period beginning on the date of disability and continuing until the day before he began to draw pension benefits, but concluding that he was not entitled to both workers' compensation and pension benefits for the same time. The Court of Appeals, R. M. Maher, P.J., and R. B. Burns and D. F. Walsh, JJ., affirmed in a memorandum opinion (Docket No. 47205). The plaintiff appeals.

The judgments of the Court of Appeals are affirmed by an equally divided Court.

Justice Williams, joined by Chief Justice Fitzgerald and Justice Ryan, would reverse the judgments and would hold:

Disability pension benefits for police officers and fire fighters which are provided under a city ordinance are not "like benefits as are prescribed in the charter" requiring a person entitled to the benefits to elect either pension or workers' compensation benefits under the workers' compensation act; thus a person who receives benefits under an ordinance plan is not precluded from pursuing a workers' compensation claim.

1. The workers' compensation act clearly states that where like benefits are prescribed in a city charter, a police officer or fire fighter who is entitled to the benefits must elect to receive either disability pension benefits or workers' compensation benefits. Disability pension benefits provided under a city ordinance do not satisfy the clear requirement of the statute even where the charter indicates that a pension system shall be provided in ordinance form.

2. The distinction between a charter disability pension plan and an ordinance plan is more than a matter of form. Amendment of a city charter requires satisfaction of specific statutory provisions. Enactment of an ordinance is a simpler procedure and does not require voter approval. "Like benefits" under the workers' compensation act must be legally enforceable rights, dependent on a charter and not reliant on the good will of a city council. In these cases, the parties' opportunities to choose the joint and last survivor option were afforded by the pension board and were not rights prescribed under the charter.

3. In *Vasser,* the WCAB did not determine whether Mr. Vasser's death was related to his employment. The WCAB should now make such a determination relative to his entitlement to workers' compensation benefits. In *Plough,* the WCAB

determined that Mr. Plough was entitled to workers' compensation benefits only for a limited period. It should now determine whether he is entitled to benefits not limited to the period before he began receiving pension benefits, and, if benefits are awarded, the pension board should set them off against the pension benefits in each case pursuant to the provision in the ordinance.

Justice Levin, joined by Justices Kavanagh and Coleman, would affirm the judgments of the Court of Appeals, and would hold that the details of "like benefits" need not be set forth in the charter, but that it is enough that they are set forth in an ordinance directed, authorized, or provided for by charter. Such a construction is consistent with and implements the apparent legislative purpose of barring double recovery. The Workers' Compensation Appeal Board correctly applied the standard in deciding that the benefits provided by the Muskegon ordinance were "like benefits".

Affirmed by an equally divided Court.

OPINION BY WILLIAMS, J.

1. WORKERS' COMPENSATION — MUNICIPAL CORPORATIONS — LIKE BENEFITS — ELECTION OF BENEFITS.

   *The workers' compensation act provides that police officers or fire fighters in municipalities or villages having charter provisions for disability benefits may waive the provisions of the act and accept like benefits that are prescribed in the charter; however, they are not entitled to receive like benefits under both the charter and the act (MCL 418.161; MSA 17.237[161]).*

2. WORKERS' COMPENSATION — MUNICIPAL CORPORATIONS — LIKE BENEFITS — ELECTION OF BENEFITS.

   *Disability benefits provided for police officers and fire fighters under a city ordinance pension plan are not "like benefits that are prescribed in the charter", even where the ordinance is enacted pursuant to the charter, so as to require a person entitled to receive the benefits to elect either the pension benefits or workers' compensation benefits under the workers' compensation act; thus, a person who receives disability pension benefits under an ordinance plan is not precluded from pursuing a workers' compensation claim (MCL 418.161; MSA 17.237[161]).*

3. WORKERS' COMPENSATION — MUNICIPAL CORPORATIONS — LIKE BENEFITS — ELECTION OF BENEFITS.

   *"Like benefits" for disability provided in a municipal pension plan*

*which are elected by a police officer or a fire fighter in lieu of workers' compensation benefits must be legally enforceable rights, dependent on a municipal charter and not reliant on the good will of a municipal council; benefits provided by ordinance do not satisfy the statutory language requiring such election, allowing a recipient to pursue a claim for workers' compensation (MCL 418.161; MSA 17.237[161]).*

OPINION BY LEVIN, J.

4. WORKERS' COMPENSATION — MUNICIPAL CORPORATIONS — LIKE
BENEFITS — ELECTION OF BENEFITS.

*Disability benefits for police officers and fire fighters under a city ordinance pension plan enacted pursuant to the city charter are "like benefits" under the statute which requires a person entitled to benefits to elect either the pension benefits or workers' compensation benefits under the workers' compensation act, precluding double recovery; the details of the like benefits need not be set out in the charter, so long as they are set out in an ordinance directed, authorized, or provided for by the charter (MCL 418.161; MSA 17.237[161]).*

*McCroskey, Libner, Van Leuven, Feldman, Cochrane & Brock* (by *Darryl R. Cochrane*) for plaintiffs.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells*) for defendants.

WILLIAMS, J.

## INTRODUCTION

In these companion cases, we are asked to decide whether the language of MCL 418.161; MSA 17.237(161), "having charter provisions prescribing like benefits", is applicable when a pension plan is set forth in an ordinance pursuant to a charter

provision. Section 161[1] of the Worker's Disability Compensation Act provided:

> "An employee as used in this act shall mean:
>
> * * *
>
> "Policemen, firemen, or employees of the police or fire departments, or their dependents, in municipalities or villages of this state *having charter provisions prescribing like benefits,* may waive the provisions of this act and *accept in lieu thereof like benefits as are prescribed in the charter* but shall not be entitled to like benefits from both. Nothing contained in this act shall be construed as limiting, changing or repealing any of the provisions of a charter of a municipality or village of this state relating to benefits, compensation, pensions, or retirement independent of this act, provided for employees." (Emphasis added.)

Section 1 of Chapter XIX of the Muskegon City Charter which previously provided for a retirement system for policemen and firemen was amended to read as follows:

> "A complete retirement system shall be provided for policemen and firemen of the City of Muskegon, by general ordinance."

---

[1] MCL 418.161; MSA 17.237(161) was amended by 1980 PA 357. The following is the pertinent language of the statute that became effective January 1, 1982.

"As used in this act, *'employee'* means:

* * *

"*Police officers, fire fighters,* or employees of the police or fire departments, or their dependents, in municipalities or villages of this state having charter provisions prescribing like benefits, may waive the provisions of this act and accept * * * like benefits *that* are prescribed in the charter but shall not be entitled to like benefits from both *their local charter and this act.* * * * This act shall *not* be construed as limiting, changing, or repealing any of the provisions of a charter of a municipality or village of this state relating to benefits, compensation, pensions or retirement independent of this act, provided for employees." (Emphasis and asterisks indicate additions and omissions with reference to prior statutory language.)

We hold that in order to fall under the workers'
compensation act language, "like benefits as are
prescribed in the charter", the like benefits must
be prescribed in the charter itself. The statutory
language is clear and leaves no room for interpre-
tation.

The benefits being challenged in these cases as
"like benefits as are prescribed in the charter"
under the workers' compensation act are actually
being received pursuant to an ordinance, not a
charter. Thus, the statutory language "having
charter provisions prescribing like benefits" and
"like benefits as are prescribed in the charter" is
not satisfied. Plaintiffs are not precluded by this
statutory provision from pursuing their workers'
compensation claims.

## I. FACTS

### A. *Vasser*

The decedent in this case, George J. Vasser, was
born on August 4, 1921, and was employed as a
fireman by the City of Muskegon for approxi-
mately 22 years. On March 25, 1973, Mr. Vasser
responded to an alarm, and, after setting up gener-
ators to aid in fighting the fire, he experienced
difficulty in breathing. He was hospitalized from
March 29, 1973, until April 2, 1973, and had
cardiac angiography performed which showed coro-
nary problems. Mr. Vasser returned to work on
May 4, 1973, as a fire inspector until he retired on
December 3, 1973. A duty disability pension was
granted by the pension board under the previous
retirement plan prescribed in the charter, and, as
of December 4, 1973, he began receiving $560 per
month. This benefit was payable only during Mr.
Vasser's lifetime.

On March 18, 1974, Mr. Vasser filed a petition with the Bureau of Workers' Disability Compensation, stating that he had experienced chest pain while fighting a fire on March 25, 1973, that his last day of work was December 3, 1973, and that his disability consisted of "injury to heart and associated muscular, circulatory and nervous systems, with sequelae". Mr. Vasser was never able to pursue this petition, however, because on October 21, 1974, he died from "atherosclerosis of coronary vessels with occlusion". His widow, Shirley J. Vasser, plaintiff in this case, pursued the claim by filing her own workers' compensation petition on December 2, 1974.

Upon the death of her husband, plaintiff also applied for death benefits pursuant to the new city pension plan. When plaintiff filed for her pension death benefits, the city charter pension plan[2] was no longer in effect. In November of 1973, there was an election in which the people voted to adopt an amendment to the city charter. The amendment provided that "[a] complete retirement system shall be provided for policemen and firemen of the City of Muskegon, *by general ordinance*" (emphasis added).[3] City Ordinance No. 748 sets forth such a retirement system and became effective on July 23, 1974. The pension board evaluated Mrs.

[2] Article 17 of the city charter had set forth in detail the policemen and firemen retirement system, spelling out the benefits retirees were entitled to receive. The decedent retired pursuant to this plan under a § 267 duty disability. But the benefits under that plan extended only to Mr. Vasser during his lifetime.

[3] The charter amendment also provided that "[t]he benefits applicable to the members of the charter retirement system at the time of the adoption of this charter amendment shall not be diminished by the ordinance retirement system". The effective date of the charter amendment was January 1, 1974, and the charter plan continued in full force and effect until the ordinance enacted by the city commission took effect on July 23, 1974.

Vasser's application and decided to grant her request for benefits. The board acted pursuant to the ordinance plan and proceeded as if the decedent had elected the joint and last survivor option[4] as of the day before his death. By so doing, the pension board was able to award plaintiff substantial benefits, *i.e.,* $447.82 per month until her late husband would have attained the age of 55, at which time she will receive a reduced amount, approximately $300.

Hearings were eventually held on her workers' compensation petition on January 8, 1975, July 21, 1975, and May 11, 1976. The hearing referee rendered his decision in an opinion mailed June 1, 1976, holding:

"In accordance with instructions in the case of *John-*

---

[4] The joint and last survivor option provides:

*"Section 16.* Within the 90 day period immediately preceding or the 20 day period immediately following the date his retirement begins a member or former member may elect to be paid his pension under one of the following optional forms of payment in lieu of a level straight life pension. The amount of an optional form of pension payment shall be the actuarial equivalent of the amount of the level straight life pension. If a member or former member does not make a timely election of an optional form of payment he shall be paid a level straight life pension.

*"Option A*—Joint and Survivor Pension. Under option A a retirant shall be paid a reduced pension throughout his life with the provision that upon his death his full reduced pension shall be continued throughout the future life of and paid to such person, having an insurable interest in his life, as he shall have nominated by written designation duly executed and filed with the board at the time of his election of option A."

The pension board treated the widow's application for pension benefits as if the joint and survivor option was elected by her husband the day before he died. The board treated the election as if it were timely made.

While we recognize there may be a sub-issue that the pension benefits awarded to the plaintiffs by the pension board were not "prescribed in" either the charter or the ordinance, we do not address the latter issue as the parties did not raise it, and it is not jurisprudentially significant.

*son v Muskegon* [61 Mich App 121; 232 NW2d 325 (1975)[5]], plaintiff has been advised she must elect between workers' compensation benefits and pension benefits. Plaintiff has elected to accept pension benefits. The petition for compensation benefits is hereby dismissed. No determination is being made as to any connection between the death and the employment."

The Workers' Compensation Appeal Board affirmed the decision of the referee on August 6, 1979. *Vasser v Muskegon Fire Dep't,* 1979 WCABO 2020. The Court of Appeals rendered a memorandum opinion on November 12, 1980, affirming the WCAB. We granted leave to appeal on July 14, 1981, and ordered that the case be argued and submitted with *Plough.* 411 Mich 1004 (1981).

### B. *Plough*

Plaintiff L. B. Plough, Jr., was born on September 13, 1927. He was employed as a policeman by the City of Muskegon from February 12, 1951, until he retired on April 28, 1973. In July of 1970,

---

[5] In *Johnson v Muskegon,* 61 Mich App 121; 232 NW2d 325 (1975), the Court of Appeals was asked to decide whether the pension benefits provided in the city charter of Muskegon, which does not include medical benefits, are "like benefits" under MCL 418.161; MSA 17.237(161). In *Johnson,* the WCAB concluded that since the charter pension benefits did not provide medical insurance for work-related injuries and the workers' compensation benefits did, they were not "like benefits". The Court of Appeals reversed and remanded. The Court held that the benefits under the charter pension plan and the workers' compensation act were "like benefits" and that, therefore, plaintiff must elect between the two. The Court of Appeals applied the test enunciated in *MacKay v Port Huron,* 288 Mich 129, 134; 284 NW 671 (1939), which stated that "[t]he term 'like benefits,' employed in the statute, does not mean identical benefits or co-extensive in every detail but, considering the full scope thereof, similar in its salient features". The salient feature was held to be periodic payments for disability and the absence of medical benefits was held to be similar to the absence of funeral benefits in *MacKay* and, thus, not of such a nature to preclude finding "like benefits".

Since we decide that the language of MCL 418.161; MSA 17.237(161) is not applicable when an ordinance is involved, we do not address the "like benefits" issue. See discussion in sections II and III below.

plaintiff had his first heart attack, and on December 11, 1972, he suffered another heart attack and was never able to return to work. He filed for a duty disability pension, and, on June 14, 1973, under the charter pension plan, he was awarded $524.01 per month for the rest of his life. However, this pension benefit was later revised because of the action by the pension board pursuant to the newly enacted ordinance plan. The ordinance setting forth the new pension plan became effective on July 23, 1974, and the pension board decided to allow every retiree to elect options available under the ordinance since Mr. Vasser's widow was awarded benefits pursuant to the ordinance. Thus, by board action, Mr. Plough was given the opportunity to alter his retirement benefits and receive adjusted benefits as prescribed under the ordinance. On December 23, 1974, Mr. Plough elected the joint and last survivor option. As a result of this election, his monthly payments were reduced to reflect this option and to recoup overpayments for the period during which he received benefits according to the charter plan. His monthly benefit was reduced from $524.01 to $451.06 per month.[6]

Plaintiff also filed a petition for workers' compensation benefits on November 21, 1973, stating that he had suffered two heart attacks and that his last day of work as a law enforcement officer was December 10, 1972. Hearings were held on the same dates as hearings on Mr. Vasser's petition, and the hearing referee came to the same conclusion, *i.e.,* that plaintiff must elect between pension

---

[6] The option election was given retroactive effect and, therefore, Mr. Plough's monthly benefits had to be recalculated. If the election had been made when he retired, his monthly benefit would have been $458.05 as opposed to $524.01. The overpayment for the period of April 28, 1973, to December 23, 1974, was $1,369.61 and the pension board decided to recoup this amount by reducing his monthly payment to $451.06.

benefits and workers' compensation benefits. The
WCAB agreed with this conclusion; however, they
evaluated plaintiff's petition for workers' compen-
sation benefits and stated:

"we reverse in part the referee's decision and find
that plaintiff sustained a work-related injury in his
skilled employment on December 11, 1972. We order
defendant to pay compensation benefits at a weekly
rate of $101 from December 12, 1972, to April 27, 1973,
inclusive (duty disability pension benefits commenced
on April 28, 1973), based on a stipulated average weekly
wage of $230 and a finding of three dependents—wife
and sons, Larry and Scott—and all reasonable and
necessary medical care during this time period. Interest
shall be computed at the rate of 5% per annum. We
further delete the last two sentences of the referee's
narrative findings." *Plough v Muskegon Police Dep't*,
1979 WCABO 2082, 2096.

Thus, the WCAB allowed benefits for the period
beginning on the date of disability until the day
before plaintiff began drawing his pension benefits.
The WCAB found that "plaintiff's irregular shift
schedule * * * aggravated, accelerated, and con-
tributed to his myocardial infarction of December
11, 1972". The WCAB further concluded, however,
that plaintiff was not entitled to collect both pen-
sion benefits and workers' compensation benefits
for the same time period and, thus, limited the
workers' compensation benefits accordingly. The
Court of Appeals affirmed the WCAB decision on
November 26, 1980, in a memorandum opinion.
We granted leave to appeal on July 14, 1981, and
ordered this case to be argued and submitted with
*Vasser.* 411 Mich 1000 (1981).

II

The first issue to be addressed in these compan-

ion cases is whether MCL 418.161; MSA
17.237(161) is applicable when pension benefits are
being collected pursuant to an ordinance enacted
as a result of an amendment to the city charter
which repealed the charter pension plan and pro-
vided that the plan should henceforth be enacted
by ordinance. MCL 418.161; MSA 17.237(161) pro-
vided in relevant part:

"An employee as used in this act shall mean:

\* \* \* \*

"Policemen, firemen, or employees of the police or fire
departments, or their dependents, in municipalities or
villages of this state *having charter provisions prescrib-
ing like benefits,* may waive the provisions of this act
and *accept in lieu thereof like benefits as are prescribed
in the charter* but shall not be entitled to like benefits
from both. Nothing contained in this act shall be con-
strued as limiting, changing, or repealing any of the
provisions of a charter of a municipality or village of
this state relating to benefits, compensation, pensions,
or retirement independent of this act, provided for
employees." (Emphasis added.)

Thus, it must be determined whether the language
"having charter provisions prescribing like bene-
fits" and "like benefits as are prescribed in the
charter" is satisfied in these cases.

The WCAB summarily dismissed this charter
argument in both *Vasser* and *Plough* as they
found no merit in plaintiffs' allegations that the
pension benefits were not provided under charter
provisions when the charter provides for the ordi-
nance provisions. Thus, the WCAB concluded that
the mere reference to the pension plan incorporat-
ing the plan in ordinance form was sufficient. The
Court of Appeals did not speak directly to this
issue, stating only the question and concluding

"[a]fter a careful review of the record, we find no reversible error".

While it is true that Mr. Vasser and Mr. Plough retired when the pension plan was set forth in detail in the city charter, the benefits being challenged as "like benefits" are those awarded pursuant to the newly enacted ordinance pension system. It was only a result of the pension board's action that Mr. Vasser's widow and Mr. Plough were able to take advantage of the options available under the ordinance plan. Under the charter plan, they would not have been awarded such benefits. Therefore, it is necessary to decide whether the receipt of benefits provided in an ordinance plan passed pursuant to a charter provision satisfies the statutory language.

It is a long-standing principle of statutory construction that where the language of a statute is clear and unambiguous there is no room for judicial construction or interpretation. *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 248-249; 191 NW2d 307 (1971); *Detroit v Redford Twp,* 253 Mich 453, 455-456; 235 NW 217 (1931); *Luyk v Hertel,* 242 Mich 445, 448; 219 NW 721 (1928).

"Where the language of a statute makes its meaning obscure, it is the duty of the courts to construe, giving it a reasonable and sensible interpretation; but where the language is clear and unambiguous, it is only for the courts to obey and enforce it." *Crary v Marquette Circuit Judge,* 197 Mich 452, 454; 163 NW 905, 166 NW 954 (1917).

Turning to the statute at hand, the language clearly states that the like benefits must be prescribed in the charter, and, thus, there is no room for judicial interpretation. The statute first states

"having charter provisions prescribing like benefits" and then states "accept in lieu thereof like benefits as are prescribed in the charter". This language is clear. We are bound by the clear statutory language and thus conclude that like benefits must be prescribed in the charter itself for MCL 418.161; MSA 17.237(161) to be applicable. We hold that the pension benefits in these cases being received pursuant to an ordinance do not satisfy the statutory language, even though the ordinance was enacted pursuant to the charter.

The defendants in these cases argue that the statute is satisfied because the charter refers to the retirement system that is provided by the ordinance. Mere reference to a pension plan in the charter is not enough. While it may be true that many cities are now providing pension plans through city ordinances pursuant to charter provisions, this does not alter the clear language of the statute. It is not for this Court to amend statutory language to reflect current trends. That is a job for the Legislature, should it feel that such an amendment is wise.

The distinction between a charter pension plan and an ordinance plan is more than a matter of form.[7] The use of the term "charter" in the statute is not without significance. A home-rule city, such as the City of Muskegon, is governed by its city charter, which can only be amended by popular vote. See Const 1963, art 7, § 22, and the homerule cities act, MCL 117.1 *et seq.;* MSA 5.2071 *et*

---

[7] In *Ford v Kuehne,* 242 Mich 428; 219 NW 680 (1928), the plaintiff chose to accept pension benefits provided by the charter and an ordinance of the city. The issue as to whether mere reference to the pension plan in the charter with the benefits being spelled out in an ordinance is sufficient was not addressed. In fact, there was no need to address such an issue as the charter of the City of Grand Rapids prescribed the pension benefits, unlike the charter at issue in this case.

*seq.* There are specific statutory requirements set forth in MCL 117.21; MSA 5.2100 which must be satisfied in order to amend a charter. On the other hand, the enactment of an ordinance is a much simpler procedure and need not be subject to voter approval. This is a significant difference. Furthermore, in these cases, the parties were able to elect these options as a result of action by the pension board, without any voter approval. It is clear that " '[l]ike benefits' must be legally enforceable rights dependent on the charter and not reliant on the good will of the city council". *Cichecki v Hamtramck,* 382 Mich 428, 435; 170 NW2d 58 (1969).

Defendant relies on *Detroit Police Officers Ass'n v Detroit,*[8] 391 Mich 44; 214 NW2d 803 (1974), in support of its theory that the general statements referring to an ordinance pension system in the charter are sufficient to satisfy MCL 418.161; MSA 17.237(161). It is true that *DPOA* stated that:

"Nowhere in the home rule cities act is there a requirement that the charter contain more than a general grant and outline of authority to a city government to implement and maintain a retirement plan. When the City placed the complete detail of its police retirement plan into the City Charter it went beyond the requirement of state law as set forth in the home rule cities act." 391 Mich 66-67.

However, *DPOA* was concerned with reconciling the home-rule cities act, MCL 117.1 *et seq.;* MSA 5.2071 *et seq.,* with the public employee relations

---

[8] In *Kment v Detroit,* 109 Mich App 48; 311 NW2d 306 (1981), the Court of Appeals concluded that the fact that a change by ordinance was possible did not make the charter benefits necessarily unenforceable in light of *Detroit Police Officers Ass'n v Detroit.* The Court of Appeals proceeded under the assumption that MCL 418.161; MSA 17.237(161) was applicable. We hold today that the "like benefits" must be prescribed by charter to fall under this statutory provision.

act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* and does not answer the question at hand. The fact that a city charter need not contain the details of the plan does not mean that the workers' compensation act provision requiring election of benefits when like benefits are prescribed in the charter is satisfied by mere reference to an ordinance plan. In fact, we hold that such reference does not satisfy the statute. The statute requires that the benefits be prescribed in the charter, and in these cases the benefits are prescribed in an ordinance. If the Legislature believes that an ordinance pension plan should be subjected to the same rules as those set forth in MCL 418.161; MSA 17.237(161) and, thus, prevent the possibility of double recovery, it can so provide. Under the language of the statute, plaintiffs may receive both the ordinance benefits and workers' compensation benefits, if they are so entitled.

III

Since we hold that MCL 418.161; MSA 17.237(161) is not applicable in these cases where the plaintiffs are receiving pension benefits pursuant to an ordinance, we need not address the issue of whether they are receiving "like benefits".

We do need to address, however, the appropriate disposition given our holding. In *Vasser,* the WCAB did not make any determination as to whether Mr. Vasser's death was related to his employment. The WCAB concluded that plaintiff was receiving "like benefits" to those under the workers' compensation act which plaintiff had elected to receive and, thus, that she was precluded from proceeding with her workers' compen-

sation claim.[9] It is now necessary for the WCAB to make a determination as to plaintiff's entitlement to workers' compensation benefits. Therefore, we remand to the WCAB for a decision not inconsistent with this opinion.

In *Plough,* we are faced with a different situation. The WCAB did award benefits to Mr. Plough, finding that "plaintiff was disabled from December 11, 1972, to *at least* April 28, 1973, when he was granted his duty disability pension". 1979 WCABO 2096 (emphasis added). Given our holding today, it is necessary for the WCAB to determine whether Mr. Plough is entitled to workers' compensation benefits for other than this limited period. Therefore, we remand this case to the WCAB for a determination as to whether Mr. Plough is entitled to workers' compensation benefits in light of today's decision. Such a determination should not be limited to the period before plaintiff began receiving pension benefits.

The decisions of the Court of Appeals and the WCAB in *Vasser* and *Plough* are reversed. We remand to the WCAB for a determination of the merits of plaintiffs' workers' compensation petitions not inconsistent with this opinion.

CONCLUSION

The Worker's Disability Compensation Act, MCL 418.161; MSA 17.237(161), applies to cities "having charter provisions prescribing like benefits" and to

---

[9] In *Slater v Grand Rapids,* 248 Mich 480; 227 NW 788 (1929), this Court held that once an election was made to take workers' compensation benefits instead of pension benefits, it was binding. However, since we hold that MCL 418.161; MSA 17.237(161) is not applicable when the benefits are prescribed in an ordinance, we need not discuss whether there was an election of "like benefits".

"like benefits as are prescribed in the charter". The charter of the City of Muskegon does not so provide. The charter merely refers to the pension system and indicates that it shall be provided in ordinance form. Given the clear language of the statute, we must conclude that the benefits challenged as "like benefits" which are set forth in an ordinance in these cases do not fall within the statutory provision. Therefore, the plaintiffs may proceed with their workers' compensation claims even though they are presently receiving pension benefits. If they are awarded workers' compensation benefits, the pension board will offset their pension benefits accordingly. Since the benefits are not "prescribed in the charter", we need not further consider whether the workers' compensation benefits and the pension benefits are "like benefits" or unlike benefits. We reverse and remand to the WCAB.

FITZGERALD, C.J., and RYAN, J., concurred with WILLIAMS, J.

LEVIN, J. *(to affirm)*. The Worker's Disability Compensation Act provides that police or fire department employees or their dependents in municipalities or villages "having charter provisions prescribing like benefits" may waive the provisions of that act and accept in lieu of the benefits provided by that act "like benefits as are prescribed in the charter but shall not be entitled to like benefits from both" the charter and that act.[1]

The Muskegon City Charter was amended to remove language providing benefits for police officers and fire fighters. At the time of the injuries and disabilities in these consolidated cases, those

---

[1] MCL 418.161; MSA 17.237(161).

provisions were set forth in an ordinance. The charter stated, "[a] complete retirement system shall be provided for policemen and firemen of the City of Muskegon, by general ordinance".[2]

The lead opinion would "hold that the pension benefits in these cases being received pursuant to an ordinance do not satisfy the statutory language, even though the ordinance was enacted pursuant to the charter".[3]

We are of the opinion that the details of "like benefits" need not be set forth in the charter. It is enough that they are set forth in an ordinance directed, authorized or provided for by charter. We construe the words *"prescribing* like benefits"/ *"prescribed* in the charter", as meaning *"directing, authorizing* or *providing for* like benefits"/*"directed, authorized* or *provided for* in the charter". We believe this construction is consistent with and implements the apparent legislative purpose of barring double recovery.

The provisions of the Muskegon Charter, stating that benefits "shall be provided" for police officers and fire fighters "by general ordinance" prescribes —directs, authorizes and provides—in the charter for such benefits.

We further conclude that the Workers' Compensation Appeal Board correctly applied the standard of *MacKay v Port Huron,* 288 Mich 129; 284 NW

---

[2] Muskegon City Charter, ch XIX, § 1.

[3] *Ante,* p 321.
The opinion states also:
"We hold that in order to fall under the workers' compensation act language, 'like benefits as are prescribed in the charter', the like benefits must be prescribed in the charter itself." *Ante,* p 313.
"In fact, we hold that such reference does not satisfy the statute. The statute requires that the benefits be prescribed in the charter, and in these cases the benefits are prescribed in an ordinance." *Ante,* p 323.

671 (1939), in deciding that the benefits provided by Muskegon's ordinance were like benefits.

We would affirm the Court of Appeals.

KAVANAGH and COLEMAN, JJ., concurred with LEVIN, J.

RILEY, J., took no part in the decision of this case.