BANNAN v CITY OF SAGINAW

Docket Nos. 70703-70705. Argued May 9, 1984 (Calendar No. 6).—
    Decided December 28, 1984. Released January 17, 1985. Rehear-
    ing denied 421 Mich 1202.

    James H. Bannan, George J. Kaufman, and Raymond J. Hale,
        retired Saginaw city fire fighters, who are eligible for both duty
        disability pensions under the city's Policemen and Firemen
        Retirement System and workers' compensation benefits,
        brought actions in the Saginaw Circuit Court against the City
        of Saginaw, contesting the city's practice under a city ordi-
        nance of deducting from disability pension benefits the full
        amount of weekly workers' compensation benefits. The actions
        were consolidated, and the court, Joseph R. McDonald, J., held
        that the city's pension ordinance which mandated the offset of
        workers' compensation benefits was not applicable to duty
        disability retirants such as the plaintiffs after reaching 55
        years of age, required the city to reimburse the plaintiffs for
        pension benefits wrongfully withheld plus interest, and en-
        joined the city from making such deductions from the plaintiffs'
        pension benefits in the future. The Court of Appeals, Allen,
        P.J., and Cynar and Martin, JJ., affirmed in an opinion per
        curiam (Docket Nos. 57322-57325). The city appeals.

        In an opinion by Justice Ryan, joined by Chief Justice Wil-
        liams and Justices Brickley, Cavanagh, and Boyle, the Supreme
        Court *held:*

        The plaintiffs' duty disability pensions are not subject to an
        offset of workers' compensation benefits received by the plain-
        tiffs, and the provision of the workers' compensation act that
        permits police or fire fighters to waive workers' compensation
        benefits and receive instead like benefits under a municipal
        charter is not applicable in these cases because the pension

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 60 Am Jur 2d, Pensions and Retirement Funds §§ 43, 44.
    81 Am Jur 2d, Workmen's Compensation § 180.
    82 Am Jur 2d, Workmen's Compensation § 364.
    Constitutional or statutory provision referring to "employees" as
        including public officers. 5 ALR2d 415.
[3] 73 Am Jur 2d, Statutes § 154.

plan at issue was not prescribed by the city charter, but rather was provided by ordinance.

1. The city pension ordinance, considered as a whole, does not require an offset of workers' compensation benefits from duty disability pensions where recipients retired after age 55. The section of the ordinance that provides for retirement after age 55 contains no reference to offset of workers' compensation benefits. By contrast, the section that provides for retirement before age 55 expressly provides for offset until duty disability retirees reach age 55. In construing statutes or ordinances, specific provisions control over general in the same ordinance, and all language in an ordinance is presumed to have meaning, leaving no part to be treated as surplusage. In these cases, the more specific limit of offset to persons who retire before 55, but not thereafter, takes precedence over the general offset provision. To interpret the specific provision as merely emphasizing the general would render the specific surplusage. In addition, the general offset provision is cross-referenced to other sections of the ordinance, none of which refer to duty disability retirees who retired after age 55. Such a construction is consistent with the policy underlying the city's pension system and with the public policy of construing pension laws in favor of beneficiaries.

2. Disability pension benefits for police officers and fire fighters which are provided under a city ordinance are not like benefits prescribed in a charter requiring a person entitled to the benefits to elect either pension or workers' compensation benefits under the workers' compensation act; thus a person who receives benefits under an ordinance plan is not precluded from pursuing a workers' compensation claim. The distinction between a charter disability pension plan and an ordinance plan is more than a matter of form. Amendment of a city charter requires satisfaction of specific statutory provisions. Enactment of an ordinance is a simpler procedure and does not require voter approval. "Like benefits" under the workers' compensation act must be legally enforceable rights, dependent on a charter and not reliant on the good will of a city council. Because in this case the pension plan was provided by ordinance and was not prescribed by the city charter, it is unnecessary to decide whether the pension benefits are "like benefits."

Affirmed.

Justice Levin, joined by Justice Kavanagh, dissenting, stated that, consistent with the apparent legislative purpose of barring double recovery, the words "charter provisions prescribing like benefits" in the workers' compensation act, should be

construed to mean benefits authorized, provided for, or directed to be provided for in a city charter. Where, as in this case, the charter provided that a "complete retirement system *shall* be provided for policemen and firemen of the city by general ordinance," benefits provided in such an ordinance are prescribed by the charter although details of the benefits are not set forth in the charter itself.

120 Mich App 307; 328 NW2d 35 (1982) affirmed.

## OPINION OF THE COURT

1. MUNICIPAL CORPORATIONS — MUNICIPAL PENSION SYSTEMS — WORKERS' COMPENSATION — OFFSET OF BENEFITS.

    Duty disability pensions provided under a city police and fire fighter retirement system ordinance were not subject to a provision in the ordinance requiring the offset of workers' compensation benefits received by retirees, where the retirees had retired after age 55 and where specific provisions required offset only where retirees retired before age 55; cross references contained in the general offset provision did not refer to retirees who retired after age 55, and an interpretation of the ordinance to include retirees who retired after age 55 would render the specific provision surplusage.

2. MUNICIPAL CORPORATIONS — WORKERS' COMPENSATION — MUNICIPAL PENSION SYSTEMS — ELECTION OF BENEFITS.

    The provision of the workers' compensation act that permits police or fire fighters to waive workers' compensation benefits and receive instead like benefits under a municipal charter was not applicable to duty disability pensions that were provided by a city ordinance (MCL 418.161; MSA 17.237[161]).

## DISSENTING OPINION BY LEVIN, J.

3. MUNICIPAL CORPORATIONS — WORKERS' COMPENSATION — MUNICIPAL PENSION SYSTEMS.

    *The words "charter provisions prescribing like benefits" in the workers' compensation act, should be construed to mean benefits authorized, provided for, or directed to be provided for in a city charter (MCL 418.161[1][a]; MSA 17.237[161][1][a]).*

4. MUNICIPAL CORPORATIONS — MUNICIPAL PENSION SYSTEMS.

    *Duty disability pension benefits provided for in a city ordinance pursuant to a requirement in the city charter that a complete retirement system for police and fire fighters be provided by general ordinance are prescribed by the charter although details of the benefits are not set forth in the charter.*

*van Benschoten, Hurlburt & van Benschoten,
P.C. (by Harvey E. van Benschoten* and *Lawrence
A. Hurlburt)*, for the plaintiffs.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy*
(by *Bruce L. Dalrymple* and *Timothy L. Curtiss)*
for the defendant.

RYAN, J. The plaintiffs in this case are three
retired fire fighters who are eligible for both duty
disability pensions under Saginaw's Policemen and
Firemen Retirement System,[1] and workers' com-
pensation benefits. We are called upon to decide two
issues. The first is whether the plaintiffs' duty
disability pensions are subject to the offset provi-
sion found in § 129.1 of the Saginaw pension ordi-
nance, so that their pension benefits can be re-
duced by the amount of workers' compensation
benefits they receive. Both the Saginaw Circuit
Court and the Court of Appeals held that the
plaintiffs' pensions are not subject to such an
offset. We agree.

The second issue presented for review is whether
§ 161 of the Michigan Worker's Disability Compen-
sation Act, MCL 418.161; MSA 17.237(161), which
allowed police or fire fighters to waive the provision
of the WDCA in lieu of "like benefits" prescribed
in a municipality's charter, is applicable to the
facts of these cases. We hold that it is not, because
the pension plan here was not prescribed in Sagi-
naw's charter, but rather was provided by ordi-
nance. *Vasser v Muskegon,* 415 Mich 308; 329
NW2d 690 (1982) (opinion by WILLIAMS, J.).

All three plaintiffs in this case, James H. Ban-
nan, George J. Kaufman, and Raymond J. Hale,
were employed as fire fighters by the City of Sagi-

[1] Ordinance No. D-1 (Saginaw Administrative Code), ch 5, art 1
(hereinafter "pension ordinance").

naw. In 1978, each plaintiff filed a complaint against the city in the Saginaw Circuit Court, contesting the city's practice of deducting from his disability pension benefits the full amount of weekly workers' compensation benefits he received. The deductions were made pursuant to § 129.1 of the Saginaw City Ordinance. The consolidated actions involve similar facts, all of which were stipulated in the trial court.

Mr. Bannan was employed by the city from 1942 until 1967. Since March 1, 1967, he has received weekly workers' compensation benefits of $69 or $3,588 annually, pursuant to a decision of the Bureau of Workers' Disability Compensation. Mr. Bannan became 55 years of age[2] on March 1, 1969, and was retired by the city on May 23, 1969, under the duty disability retirement provision of the city's pension ordinance. Ord. No. D-1, ch 5, art 1, § 123.1. At this time, he became entitled to an annual pension of $3,479.06. However, since May 23, 1969, the city has deducted the full amount of weekly workers' compensation benefits paid to Mr. Bannan from the amount of pension benefits to which he is entitled as a disability retirant. Since the amount of his workers' compensation benefits exceeded his pension benefits, he has received no money from the Policemen and Firemen Retirement System of Saginaw. The amount of offsets in controversy totals $26,383.65.

Mr. Kaufman worked for the city from 1938 until 1973. He became 55 years of age on May 20, 1971. On November 21, 1974, the city voluntarily began paying Mr. Kaufman weekly workers' compensation benefits, paid retroactively to September 20, 1973, of $104 per week or $5,408 annually. The parties stipulated in the trial court that Mr. Kauf-

[2] Saginaw fire fighters may take a voluntary retirement at age 55. Ord. No. D-1, ch 5, art 1, § 102.1(u).

man is entitled to duty disability retirement status as of September 20, 1973. The annual pension to which he is entitled is $10,408.84. Mr. Kaufman's pension benefits have also been offset by the amount of workers' compensation benefits received, and the amount in controversy is $33,040.65.

Mr. Hale worked as a Saginaw fire fighter from 1949 until 1974. On March 9, 1974, the city voluntarily began paying him workers' compensation benefits in the amount of $106 per week, or $5,512 annually. He became 55 years of age on September 14, 1974, and was granted a duty disability pension on that date, in the amount of $8,035.30 annually. As with Messrs. Bannan and Kaufman, the city deducted the full amount of Mr. Hale's workers' compensation benefits from his pension benefits. The accumulated offset in controversy is $28,254.65.

In a consolidated opinion, the circuit court found in favor of the plaintiffs. Applying established rules of statutory construction, it concluded that § 129.1 of the city's pension ordinance, which mandates the offset of workers' compensation benefits against pension benefits, is not applicable to a duty disability retirant after he attains 55 years of age. The judgments entered in favor of each of the plaintiffs required the city to reimburse the plaintiffs for pension payments wrongfully withheld, awarded interest on the amount due, and enjoined the city from deducting workers' compensation benefits paid or payable from future pension benefits payable to the plaintiffs. The Court of Appeals affirmed in a per curiam opinion decided October 7, 1982. *Bannan v City of Saginaw,* 120 Mich App 307; 328 NW2d 35 (1982). The city's application for rehearing was denied on November 18, 1982. We granted leave to appeal. 418 Mich 880 (1983).

# I

## Application of Offset Provision (§ 129.1) of Saginaw Pension Ordinance to Over-55 Duty-Disabled Retirees

Saginaw's pension ordinance, which contains the city's Policemen and Firemen Retirement System, provides for an offset of workers' compensation benefits against pension benefits:

"Any workmen's compensation which may be paid or payable to a member retirant or beneficiary on account of his city employment shall be offset against any pensions payable to such member, retirant or beneficiary. In case the present value of the workmen's compensation is less than the pension reserves for the pension payable under this ordinance, the present value of such workmen's compensation shall be deducted from such pension reserves and such pensions as may be provided by the pension reserves so reduced shall be payable under the provisions of this article." Ord. No. D-1, ch 5, art 1, § 129.1.

The plaintiffs retired under §§ 123-124, which provide for work-related disability pensions. Section 123 provides, in part:

"A member who becomes physically or mentally totally incapacitated for duty, as a policeman or fireman in the employ of the city, by reason of a personal injury or disease, which the board of trustees finds to have occurred as the natural and proximate result of causes arising out of and in the course of his employment with the city, and the medical director, after a physical examination of such member, certifies to the board that such member is physically or mentally totally incapacitated to perform the duties of a policeman or fireman in the employ of the city, shall be retired by the board upon written application filed with the board by the said member or his department head. * * * [Appeal procedure omitted] * * * Upon his retirement he shall

be entitled to a pension provided in Section 124." Ord.
No. D-1, ch 5, art 1, § 123.1.

Section 124 provides:

"124.1 A member, *who retires at or after his attain-
ment of age 55 years on account of disability,* as pro-
vided in Section 123, shall receive a disability pension
computed according to Section 118. Upon his retirement
he shall have the right to elect, in lieu of his straight
life disability pension, to receive his disability pension
under an option provided for in Section 120.

"124.2 *A member who retires prior to his attainment
of age 55 years on account of disability,* as provided in
Section 123, shall receive a disability pension computed
according to Subsections 118.1 and 118.3. For the exclu-
sive purpose only of computing his disability pension
his credited service shall be increased by the number of
years, and fraction of a year, in the period from the
date of his disability retirement to the date he would
attain age 55 years. Upon his attainment of age 55
years his disability pension shall be recomputed using a
final average salary determined according to the sala-
ries at the time he attains age 55 years for the ranks
used in computing his final average salary at the time
of his disability retirement. In no event shall such
recomputed disability pension be less than the disability
pension he received prior to his attaining age 55 years.
Upon his retirement he shall have the right to elect, in
lieu of a straight life disability pension, to receive his
disability pension under an option provided for in Sub-
section 120. *To his attainment of age 55 years his
disability pension shall be subject to Sections 128 and
129."* Ord. No. D-1, ch 5, art 1, §§ 124.1, 124.2 (emphasis
added).

Each of the plaintiffs retired at or after age 55
pursuant to § 124.1. Section 124.1 contains no
reference to the workers' compensation benefits
offset provision of § 129.1. In contrast, § 124.2,
which applies to members who retire *before* age
55, expressly provides that the § 129.1 offset provi-

sion is applicable to duty disabled retirees until they reach 55 years of age.[3] The question, therefore, is whether the § 129.1 offset provision applies to duty disabled retirees who retire under § 124.1, as did these plaintiffs.

Finding an ambiguity in the pension ordinance, the Court of Appeals employed three familiar rules of statutory construction and applied them to the ordinance to interpret its meaning. *Bannan, supra,* pp 319-321. Firstly, applying the rule that specific provisions control over general ones in the same statute, the Court of Appeals found that "the last sentence of § 124.2 took precedence over the more general provision of § 129." *Bannan, supra,* p 320. Secondly, the Court of Appeals noted that all language in a statute is presumed to have meaning and no part of a statute should be treated as surplusage. In response to the city's argument that the purpose of the last sentence of § 124.2 is merely to *emphasize* that under-55 duty disabled retirees are subject to the § 129 offset, the Court of Appeals stated that such an interpretation would render the last sentence of § 124.2 surplusage. *Bannan, supra,* p 320. The Court therefore concluded that the logical interpretation of § 124 is that the offset applies to duty disabled retirees *until* age 55, but does not apply thereafter. *Bannan, supra,* p 320. Thirdly, the Court of Appeals construed the ordinance as a whole, finding that § 129 is expressly cross-referenced in three different sections: "(1) in § 122.1 relating to a retirant taking a nonduty disability retirement; (2) in §§ 127.1(b)-127.1(e) pertaining to pensions payable to widows, children, and dependents; and (3) in

---

[3] Two other provisions of the pension ordinance also contain express references to the § 129.1 offset. Ord. No. D-1, ch 5, art 1, § 122.1 (nonduty disability retirees); §§ 127.1(b)-127.1(e) (pensions payable to widows, children, and dependents).

§ 124.2, as previously noted, pertaining to a duty-disabled retiree up to 55 years of age." *Bannan, supra,* p 320. The Court concluded that, since § 124.1 does *not* refer to § 129, the general offset language of § 129 "only applies when expressly cross-referred." *Bannan, supra,* p 321. Therefore, the Court of Appeals held that the trial court correctly determined that the § 129 offset does not apply to the plaintiffs, duty disabled retirees who retired after attaining age 55 under § 124.1. *Bannan, supra,* p 321.

Appellant, City of Saginaw, contends that the same rules of statutory construction employed by the Court of Appeals compel the opposite conclusion.

We are satisfied that the Court of Appeals interpretation of the pension ordinance is the correct one, and we agree with the reasoning and result of that portion of its opinion. Moreover, this interpretation is consistent with the policy behind the pension system involved in this case, which is funded in part by mandatory wage contributions. Ord. No. D-1, ch 5, art 1, § 131.2. Members of the system do not participate in the federal social security system. They may take a voluntary retirement at age 55. See footnote 2. We agree with the plaintiffs' contention that to deprive duty disabled retirees of their earned retirement income, after they have become 55 years of age, is contrary to the underlying purpose of the pension ordinance.

Our holding that the § 129.1 offset does not apply to these plaintiffs is also consistent with the policy of liberally construing pension laws in favor of the intended beneficiaries. *O'Connell v Dearborn Pension Board,* 334 Mich 208, 214-215; 54 NW2d 301 (1952). For these reasons, we hold that the pension benefits of duty disabled retirees who retire pursuant to § 124.1 of Saginaw's pension ordi-

nance, Ord. No. D-1, ch 5, art 1, are not subject to the § 129.1 offset of workers' compensation benefits.

## II

### APPLICABILITY OF § 161 OF WORKER'S DISABILITY COMPENSATION ACT

The second issue presented is whether § 161 of Michigan's Worker's Disability Compensation Act, MCL 418.161; MSA 17.237(161), is applicable to the facts of this case. In pertinent part, § 161 provided:[4]

"Policemen, firemen, or employees of the police or fire departments, or their dependents, in municipalities or villages of this state *having charter provisions prescribing like benefits,* may waive the provisions of this act and *accept in lieu thereof such like benefits as are prescribed in the charter* but shall not be entitled to like benefits from both. Nothing contained in this act shall be construed as limiting, changing, or repealing

[4] This statute was amended, immediately effective July 24, 1983, to read as follows:

"Police officers, fire fighters, or employees of the police or fire departments, or their dependents, in municipalities or villages of this state providing like benefits, may waive the provisions of this act and accept like benefits that are provided by the municipality or village but shall not be entitled to like benefits from both the municipality or village and this act; however, this waiver shall not prohibit such employees or their dependents from being reimbursed under section 315 for the medical expenses or portion of medical expenses that are not otherwise provided for by the municipality or village. This act shall not be construed as limiting, changing, or repealing any of the provisions of a charter of a municipality or village of this state relating to benefits, compensation, pensions, or retirement independent of this act, provided for employees." MCL 418.161; MSA 17.237(161).

The parties apparently agree that, since the plaintiffs' complaints were filed and the decisions of the circuit court and Court of Appeals rendered before this amendment was enacted, it does not apply to this case. Therefore, we express no opinion as to its meaning or applicability.

any of the provisions of a charter of a municipality or village of this state relating to benefits, compensation, pensions, or retirement independent of this act, provided for employees." MCL 418.161; MSA 17.237(161). (Emphasis added.)

Saginaw's City Charter contains the following language:

"A complete retirement system shall be provided for policemen and firemen of the city by general ordinance." Ch XVI, § 1, amended effective January 1, 1965.

The Policemen and Firemen Retirement System is set forth in the city's ordinances, as discussed above. The issue, then, is whether the "like benefits" provision contained in § 161 of the WDCA is applicable where the retirement plan is provided by *ordinance,* adopted pursuant to a general provision in the charter.

In its discussion of this issue, the Court of Appeals distinguished *Johnson v Muskegon,* 61 Mich App 121; 232 NW2d 325 (1975), in which a different panel of the Court of Appeals held that benefits received under a disability retirement plan prescribed in Muskegon's City Charter were "like benefits" under § 161. The Court found that *Johnson* was distinguishable from this case, in part because the pension benefits in *Johnson* were set forth in the city charter. *Bannan, supra,* p 322. The Court further held that the disability benefits in this case are "primarily retirement benefits," and therefore not "like benefits" under § 161. Visiting Judge R. B. MARTIN concurred in the per curiam opinion below, but found it unnecessary to decide whether the pension and workers' compensation benefits were "like benefits" because the

pension benefits are provided by ordinance and, therefore, § 161 is inapplicable.

After the Court of Appeals released its decision in this case, we decided *Vasser v Muskegon* and *Plough v Muskegon,* 415 Mich 308; 329 NW2d 690 (1982). In those companion cases, we were confronted with the precise issue presented here. *Vasser* and *Plough* involved facts similar to these. A fireman and policeman employed by the City of Muskegon were granted duty disability pensions. Muskegon's retirement plan had previously been prescribed in the city charter, but, in 1973, the charter was amended to read as follows:

"A complete retirement system shall be provided for policemen and firemen of the City of Muskegon, by general ordinance." *Vasser, supra,* p 312.

In both *Vasser* and *Plough,* the Workers' Compensation Appeal Board affirmed the hearing referee's decision that the plaintiffs were required to elect between pension benefits and workers' compensation benefits pursuant to § 161 and *Johnson v Muskegon, supra.* The Court of Appeals affirmed the WCAB. *Vasser, supra,* p 318.

In *Vasser,* this Court was equally divided on the issue of the applicability of § 161 to cases in which the benefits are prescribed in an ordinance adopted pursuant to a general provision in the charter. Justice WILLIAMS, in an opinion joined by Chief Justice FITZGERALD and Justice RYAN, held that "the language clearly states that the like benefits must be prescribed in the charter, and, thus, there is no room for judicial interpretation." *Vasser, supra,* p 320. The opinion states:

"We are bound by the clear statutory language and thus conclude that like benefits must be prescribed in

the charter itself for MCL 418.161; MSA 17.237(161) to be applicable. *We hold that the pension benefits in these cases being received pursuant to an ordinance do not satisfy the statutory language, even though the ordinance was enacted pursuant to the charter." Vasser, supra,* p 321 (emphasis added).

In response to Muskegon's contention that § 161 is applicable because the city charter refers to the retirement plan, Justice WILLIAMS stated that such a reference fails to satisfy the clear language of the statute. *Vasser, supra,* p 321. Moreover, the distinction between a charter pension plan and a plan provided by ordinance "is more than a matter of form," since a home-rule city's charter may only be amended with the electorate's approval, while the enactment of an ordinance is a much simpler procedure.[5] *Vasser, supra,* p 321. Justice WILLIAMS' opinion concluded that, under the clear and unambiguous language of the statute, the plaintiffs, if entitled, could receive both the pension benefits and workers' compensation benefits. *Vasser, supra,* p 323.

In an opinion authored by Justice LEVIN, however, three members of the Court were "of the opinion that the details of 'like benefits' need not be set forth in the charter." *Vasser, supra,* p 326.[6] Instead, they construed the words "having charter provisions prescribing like benefits" as meaning the charter may *direct, authorize,* or *provide* for "like benefits." Holding that the reference to a policemen and firemen retirement system in the Muskegon charter satisfied the relevant language of § 161, Justice LEVIN went on to conclude that

[5] In *Cichecki v Hamtramck,* 382 Mich 428, 435; 170 NW2d 58 (1969), we stated that " '[l]ike benefits' must be legally enforceable rights dependent on the charter and not reliant on the good will of the city council."

[6] Justice KAVANAGH and Justice COLEMAN concurred. Justice RILEY took no part in the decision.

the benefits provided by the Muskegon ordinance were "like benefits." *Vasser, supra,* pp 326-327. Thus, the Court of Appeals decision was affirmed by an equally divided Court.

For the reasons given by Justice WILLIAMS in his opinion in *Vasser,* we are persuaded that § 161 is not applicable to the case before us. Where the language of a statute is clear and unambiguous, the court's role is to apply it as written. *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 248-249; 191 NW2d 307 (1971).

Our resolution of this issue makes it unnecessary for us to determine whether the pension benefits in this case are "like benefits" under § 161 of the WDCA, MCL 418.161; MSA 17.237(161).

The decisions of the Court of Appeals and the circuit court are affirmed.

WILLIAMS, C.J., and BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with RYAN, J.

LEVIN, J. *(dissenting).* This Court granted leave to appeal to resolve a controversy concerning the construction of the provision of the workers' compensation act providing that police or fire department employees, or their dependents, in municipalities or villages "having *charter* provisions prescribing like benefits, may waive the provisions of this act and accept in lieu thereof such like benefits as are prescribed in the charter but shall not be entitled to like benefits from both." MCL 418.161(1)(a); MSA 17.237(161)(1)(a). (Emphasis supplied.)

In *Vasser v City of Muskegon,* 415 Mich 308, 311; 329 NW2d 690 (1982), this Court was evenly divided on the question whether duty disability pension benefits provided under Muskegon's *ordinance* were encompassed within the meaning of

"having *charter* provisions prescribing like benefits." (Emphasis supplied.)

The opinion of the Court in the instant case adopts the view of three justices in *Vasser* that benefits are not prescribed by the charter "even though the ordinance was enacted pursuant to the charter"; "the like benefits must be prescribed in the charter itself." *Vasser, supra,* pp 321, 313 (WILLIAMS, J.). We adhere to the view we expressed in *Vasser* that where, as in *Vasser* and here, the charter provided that a "complete retirement system *shall* be provided for policemen and firemen of the city by general ordinance"[1] (emphasis supplied), benefits provided in an ordinance, adopted pursuant to such a charter direction to provide therefor, are prescribed by the charter although the details of the benefits are set forth in an ordinance and not in the charter itself.

We would construe the words "charter provisions prescribing like benefits" (emphasis supplied), as meaning benefits authorized, provided for, or directed to be provided for in the charter. "We believe this construction is consistent with and implements the apparent legislative purpose of barring double recovery." *Vasser, supra,* p 326 (LEVIN, J.).

Within seven months after our 3-3 indecision in *Vasser,* the Legislature clarified its intention by amending the statute to eliminate the word "charter"; the operative language is now "providing like benefits."[2]

---

[1] Saginaw City Charter, Ch XVI, § 1. In *Vasser,* the words "of Muskegon" follow the word "city." See *Vasser v Muskegon,* 415 Mich 308, 326; 329 NW2d 690 (1982) (WILLIAMS, J.). Muskegon City Charter, Ch XIX, § 1.

[2] 1983 PA 162, approved July 24, 1983, with immediate effect; MCL 418.161(1)(a); MSA 17.237(161)(1)(a) reads in relevant part:

"Police officers, fire fighters, or employees of the police or fire departments, or their dependents, in municipalities or villages of this

Our 3-3 division in *Vasser* indicated an unresolved controversy concerning the construction of the statute. In such circumstances, a legislative change has been regarded as a "clarification," and the meaning resulting from the clarification as the originally intended meaning. See *Detroit Edison Co v Dep't of Revenue,* 320 Mich 506, 520-521; 31 NW2d 809 (1948), where this Court said:

"In 1 Sutherland Statutory Construction (3d ed 1943), p 418, § 1931, it is said:
" 'If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change.'
"See, also, *Attorney General v Lewis,* 151 Mich 81 [1908]; *Hambel v Lowry,* 264 Mo 168 (174 SW 405) [1915]; *John Morrell & Co v Unemployment Compensation Commission,* 69 SD 618 (13 NW [2d] 498) [1944].
"In view of the factual situation existing at the time of the amendment it is a logical conclusion that the primary purpose of the legislature was, as above indicated, to clarify the statute because of the differences of opinion existing between the department of revenue and the board of tax appeals. Plaintiff's claim as to the force and effect to be given the amendment is not tenable. The presumption on which such claim is based does not obtain."

The parties have not discussed whether the 1983 amendment, which *substituted* the amendatory

state providing like benefits, may waive the provisions of this act and accept like benefits that are provided by the municipality or village but shall not be entitled to like benefits from both the municipality or village and this act; however, this waiver shall not prohibit such employees or their dependents from being reimbursed under section 315 for the medical expenses or portion of medical expenses that are not otherwise provided for by the municipality or village. This act shall not be construed as limiting, changing, or repealing any of the provisions of a charter of a municipality or village of this state relating to benefits, compensation, pensions, or retirement independent of this act, provided for employees."

language for the former language, has retroactive effect.

The conclusion of the opinion of the Court that benefits provided in an ordinance are not within the intendment of the statute makes it unnecessary for the majority to address the question whether the benefits in the instant case are "like benefits." Since the majority does not reach that question, we also express no opinion thereon.

KAVANAGH, J., concurred with LEVIN, J.